# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:17-cr-00130-8 |
| | ) | |
| MICHAEL FORRESTER, JR. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Michael Forrester Jr.'s Motions to Suppress evidence obtained from (1) Room 231, 129 Westfield Court, and a 2002 gold Chevrolet Cavalier (Doc. 884); and (2) a red Mazda B3000 bearing Arkansas license plate 411VYD (Doc. No. 885). Having considered the arguments raised in those motions, the Government's response (Doc. No. 951), Forrester's reply (Doc. No. 1005), the oral arguments held on September 12, 2019, and the supplemental briefing (Doc. Nos. 1028 & 1030), the Court will deny both motions.

## I. The Warrant Requirement

The Fourth Amendment prohibits unreasonable searches and seizures, with "'the ultimate touchstone [being] reasonableness.'" Kentucky v. King, 563 U.S. 452, 463 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). The Supreme Court has "determined that '[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.'" Riley v. California, 134 S. Ct. 2473, 2482 (2014) (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995)).

In this case, a search warrant was issued by a federal Magistrate Judge on January 11, 2018 for both Room 231 at the InTown Suites and the Cavalier. A second search warrant was issued by the same Magistrate Judge on January 19, 2018 for the Mazda truck.

The warrants were based upon almost identical search warrant applications authored by

Special Agent Benjamin Colkmire of the Bureau of Alcohol, Tobacco and Firearms. Agent. Based on many of the same allegations, Agent Colkmire also obtained search warrants for three other residences from the Magistrate Judge, all arising out of a larger investigation into the Mongols Motorcycle Club operating out of Clarksville, Tennessee.

The applications in support of the search warrants were lengthy: the statement in support of the affidavit for the hotel room and the Cavalier was 57-pages long; the statement in support of the search of the Mazda truck was 49-pages long. Length, of course, is generally not dispositive, and the question presented by both Motions to Suppress is whether probable cause existed for either the search of the hotel room or the vehicles.

To meet the warrant requirement, "a neutral and detached magistrate must independently determine that probable cause exists after weighing the evidence supplied by the police." Graves v. Mahoning Cty., 831 F.3d 772, 774 (6th Cir. May 2016); see also Coolidge v. New Hampshire, 403 U.S. 443, 450 (1971) (a "neutral and detached magistrate must review a search warrant before it can be executed"). "In determining whether a warrant is supported by probable cause, 'the courts must . . . insist that the magistrate . . . not serve merely as a rubber stamp for the police.'" United States v. Frazier, 423 F.3d 526, 537 (6th Cir. 2005) (citation omitted).

"The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)). As the Supreme Court has stated, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability

that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

The circumstances presented first to the Magistrate Judge and now to this Court raise serious questions as to whether there was a fair probability to believe that, *in January 2018*, evidence regarding Forrester's supposed affiliation with the Mongols (itself not a crime) would be found in either the hotel room or the vehicles, including apparel that might show such affiliation. This is true even under the "flexible all-things-considered approach," Florida v. Harris, 568 U.S. 237, 244 (2013), and even considering that "[t]he critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

The applications set forth detailed allegations establishing probable cause to conclude that, from the spring of 2015 until July 2017, the Clarksville Mongols constituted a RICO enterprise. There was also probable cause to believe that this enterprise engaged in a variety of crimes, including kidnapping, murder, home-invasion robbery, shootings, and drug trafficking. One could also conclude from the applications that Mongols and their prospects socialized with each other, and showed their affiliation to the club by wearing items displaying the Mongols' logo or other insignia.

Where the applications falter, however, is showing a continuing connection between Forester and the Mongols, and little if any connection between the hotel room or the vehicles to either the Mongols or any crime that they are alleged to have committed. The applications do not suggest that Forrester committed any crimes in the hotel room, or that he used the vehicles to commit crimes. Instead, the few paragraphs in which Forrester is even mentioned show, at best, his connection with

3

the Mongols through July 2017. These are:

> (1) Paragraphs 57 and 58, wherein Witness J identified Forrester as (a) being associated with the Clarksville Mongols in the late spring or early summer 2015, and (b) participating in a home invasion robbery in Christina County Kentucky in early July 2015 in order to get money for an upcoming Mongols' rally.
>
> (2) Paragraph 112(h), stating that a photograph posted on Facebook on January 19, 2018 showed Forrester and others wearing Mongols cuts or clothing.
>
> (3) Paragraphs 125 and 126 wherein Forrester is alleged to have "merged" phones call between James Frazier and another Mongol during which it is "believed" Frazier through use of coded language stated that Forrester was going to be officially "patched in" to the Mongols in July 2017.
>
> (3) Paragraph 134, 135, 137, and 138, indicating that Forrester was seen either entering or exiting 902 Cimarron Court in Clarksville on June 15, 20, 22, 26 and 27, 2017, at times wearing a black shirt with some sort of Mongols logo, and sometimes in the company of other individuals identified as being associated with the Mongols. The Cimarron Court residence is associated with Co-Defendant Jamie Hern, although Forrester told his probation officer at some point prior to June 30, 2017 that this was his address.

(Doc. No. 951-1 at 30-31, 50, 54 & 57-58). As for Forrester's connection to the hotel room and the vehicles, the applications show that a gold 2002 Chevrolet Cavalier was registered to Forrester, surveillance on January 3, 2018 showed the Cavalier parked on the back side of the InTown Suites hotel, and a clerk at the hotel indicated that Forrester had been a guest since December 30, 2017 and extended his stay until January 13, 2018. The red Mazda truck was connected to Forrester because it was parked next to the Cavalier, the key to the truck was found in Forrester's pocket when he was arrested, and Forrester told officers that the keys to the Cavalier could be found in the truck.

It is true that "[n]either the issuing judge nor the reviewing courts should engage in line-by-line scrutiny of the warrant application's affidavit," but the "affidavit or warrant request 'must state a nexus between the place to be searched and the evidence sought.'" United States v. Williams, 544 F.3d 683, 686 (6th Cir. 2008) (quoting United States v. Bethal, 245 F. App'x 460, 464

4

(6th Cir.2007)). "A magistrate may infer a nexus between a suspect and his residence, depending upon "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." Id. at 687 (quoting United States v. Savoca, 761 F.2d 292, 298 (6th Cir.1985)).

Here, the Government argues that there was probable cause to believe that Forrester would, at a minimum, have Mongols' paraphernalia at his residence and, by extension, in his car. This would include such things like the black t-shirts he was seen wearing by surveillance officers. Maybe so, but Forrester was staying in a hotel room and, according to the applications, Agent Colkmire was told by Forrester's probation officer on December 14, 2017 that Forrester listed his address as being 902 Cimarron Court. (Id. at 59). This suggests that the hotel room may not have been Forrester's actual residence and that he may have stored his clothing at the Cimarron Court address.

Regardless, the last time that law enforcement noted seeing Forrester associating with Mongols or wearing their gear was in June 2017. In fact, nothing was presented to the Magistrate Judge indicating that Forrester was seen entering or exiting the hotel room, or that he was wearing Mongols apparel when doing so. Nor was there any indication that other Mongols or Mongols associates were seen with Forrester in or around the hotel room. Nor was there any connection whatsoever between the Mazda truck and the Mongols, other than its keys were found in Forrester's pocket.

The Court recognizes, as it must, that a "magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Gates, 462 U.S. at 236 (citation omitted). Nevertheless, the Court feels compelled to note that, under the circumstances presented by the applications, it would be hard-pressed to find probable cause to believe that evidence or Mongols paraphernalia would be found in a room that Forrester just started renting some six months after he

5

was last seen associating with the Mongols, let alone in a car that he was then driving or a truck he merely had access to. Ultimately, however, the validity of the motions to suppress does not turn on the existence of nonexistence of probable cause.

## II. Exceptions to the Warrant Requirement

The "usual requirement" that a search warranted be secured prior to a search "is subject to a number of exceptions." Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016). Two are relevant here: the good faith exception and the exception based upon the inevitable discovery doctrine.

### A. Good Faith Exception

The Supreme Court established the good faith exception in United States v. Leon, 468 U.S. 897, 922 (1984), theorizing "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Since then, "[t]he Supreme Court has identified at least four situations in which the government's reliance on a subsequently invalidated search warrant is objectively unreasonable: (1) where 'the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) 'where the issuing magistrate wholly abandoned his [neutral and detached] judicial role'; (3) where the warrant is 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) where the warrant is so 'facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'" United States v. Powell, 603 F. App'x 475, 477 (6th Cir. 2015) (quoting Leon, 46 U.S. at 923).

There is no suggestion that the Magistrate Judge in this case was misled, or that he abandoned his role of neutrality. Instead, Forrester argues that the search warrants were defective

and lacked probable cause because they were based on "bare-bones" applications.

An affidavit or application is bare-boned if it "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005) (quoting United States v. Weaver, 99 F.3d 1372, 1380 (6th Cir.1996)). Such an affidavit or application is not to be confused with one that lacks probable cause. As the Sixth Circuit has recently explained:

> An affidavit cannot be labeled "bare bones" simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be so lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, no reasonable officer would rely on it. The distinction is not merely semantical. There must be daylight between the "bare-bones" and "substantial basis" standards if Leon's good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function. Only when law enforcement officials operate in "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights will the heavy toll of suppression pay its way. Otherwise, when the police act with an objectively reasonable good-faith belief that their conduct is lawful, excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule. We must therefore find that the defects in an affidavit are apparent in the eyes of a reasonable official before faulting an executive official for complying with his or her duty to execute a court-issued order.

United States v. White, 874 F.3d 490, 497 (6th Cir. 2017) (internal citations and quotation marks omitted). Put more simply, "[a] finding of good faith reliance requires 'a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place." United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004).

The Court cannot say that (1) Agent Colkmire acted in deliberate, reckless, or grossly negligent disregard of Forrester's Fourth Amendment rights when he executed the warrants issued by the Magistrate Judge; (2) no reasonable officer would rely on those warrants because the lack of probable cause was so clear, or (3) "a reasonably well trained officer would have known that the

7

search[es] w[ere] illegal despite the magistrate's decision." White at 496. "Although one can split hairs with the affidavit[s] in this case, it is impossible to deny that [they] contain[] factual allegations, not just suspicions or conclusions" that link Forrester to the Mongols and gang paraphernalia, and "some connection, regardless of how remote it may have been" between Forrester, the Mongols, the hotel room and the vehicles. United States v. Christian, 925 F.3d 305, 313 (6th Cir. 2019) .

Because of the enterprise evidence sought by the warrant, it was not entirely unreasonable to believe that Forrester's gang-related clothing and other property evidencing his association with the Mongols may have a nexus to, and be found in, the hotel room where he had recently extended his stay, and in the gold Cavalier and the red Mazda truck over which he had dominion and control. See, United States v. Cobb, 397 F. App'x 128, 133 (6th Cir. 2010) ("We have held repeatedly that the required nexus between evidence sought in a search and an individual's residence need not be based on direct evidence presented to the magistrate judge issuing the warrant. Rather, the nexus may be inferred."); United States v. Williams, 544 F.3d 683, 688 (6th Cir. 2008) ("[W]e join other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence."); United States v. Graham, 275 F.3d 490, 510 (6th Cir. 2001) ("[T]his court had recognized that police may search a car without a warrant subsequent to executing a valid house search when that search has given rise to probable cause to search the car."); United States v. Thompson, 91 F.3d 145 (6th Cir. 1996) (unpublished) ("[A] majority of the courts that have addressed the issue have upheld the search of a car on the premises, even where the search of vehicles was not expressly included in the wording of the warrant, regardless of whether it was owned or controlled by the owner of the

premises searched.").

Agent Colkmire could also place good faith reliance on the warrants notwithstanding the passage of time from when Forrester was last seen sporting Mongols' gear or associating with gang members. The investigation revealed that Forrester had a longstanding connection to the Mongols and, in fact, he was to be a charter member of Clarksville Mongols but for the fact that he was in jail at the time the others traveled to California to receive their patches. Given Forrester's apparent interest in, and affiliation with, the Mongols that extended for a period of at least two years, it would not be unreasonable for Agent Colkmire to assume that Forrester would keep his Mongols clothing and other related materials close at hand, even months later. See United States v. Campbell, No. 07-10104-MLB, 2017 WL 2155657 at *6 (D. Kan. July 25, 2017) (noting that gang paraphernalia may be kept in a residence for a long period of time); United States v. Bergen, No. C 12-00119SI, 2014 WSL 1217981 at *6 (N.D. Cal. Mar. 21, 2014) (stating that "clothing, firearms, and gang indicia are the types of items that are kept for a long time before they are discarded").

Agent Colkmire acted in good faith in seeking and executing the warrants issued by the Magistrate Judge.

**B. Inevitable-Discovery Exception**

The inevitable-discovery doctrine "provides that evidence secured through unlawful means is admissible if the prosecution can show that it 'ultimately or inevitably would have been discovered by lawful means[.]'" United States v. Figueredo-Diaz, 718 F.3d 568, 574 (6th Cir. 2013) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). "The doctrine demonstrates the exclusionary rule's aim of deterrence: for even where discovered evidence is the undoubted product of illegality, '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately

9

or inevitably would have been discovered by lawful means . . .[,] then the deterrence rationale has so little basis that the evidence should be received.'" Id. at 574-75 (quoting Nix, 467 U.S. at 444).

For the inevitable discovery exception to apply, the Government must "demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." United States v. Keszthelyi, 308 F.3d 557, 574 (6th Cir. 2002) (emphasis in original) (quoting United States v. Kennedy, 61 F.3d 494, 499 (6th Cir. 1995)). "The government can satisfy its burden by showing that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence." United States v. Ford, 184 F.3d 566, 577 (6th Cir. 1999). "Although some speculation about how events would have unfolded in the absence of the illegal search is necessary under this doctrine, '[a court] must keep speculation at a minimum by focusing on demonstrated historical facts capable of ready verification or impeachment.'" Keszthelyi, 308 F.3d at 574 (citation omitted)

At the time of the searches, Forrester was on probation for a robbery conviction. As a part of his probation, he "agree[d] to a search, without a warrant, of my person, vehicle, property or place of residence by any Probation/Parole Officer or law enforcement officer, at any time." (Doc. No. 1030-1 at 2).

Even though "[t]he Fourth Amendment bars unreasonable searches and seizures by the government . . . the usual Fourth Amendment analysis is different for individuals subject to probation." United States v. Ickes, 922 F.3d 708, 71011 (6th Cir. 2019). Where an individual is "subject to state-ordered probation that include[s] a search provision . . . the police need no more than a reasonable suspicion to search his residence and vehicle." Id. at 711 (citing United States v.

Knight, 534 U.S. 112, 119-121 (2001)).

Because Forrester was subject to a search provision as a part of his probation, it was not necessary for officers to obtain search warrants to search the hotel room and vehicles, so long as they had reasonable suspicion to conclude that Forrester had committed a crime. They did because the day before the first search Forrester was charged with thirteen crimes related to his involvement with the Mongols. Thus, "viewing affairs as they existed at the instant before the [allegedly] unlawful search, and what would have happened had the . . . search never occurred," United States v. Chapman-Sexton, 758 F. App'x 437, 444 (6th Cir. 2018), Forrester would have been required to report his arrest to his probation officer under the term of his probation agreement, which likely would have prompted a search, either by the probation officer or officers involved in the present investigation. See, United States v. Valladares, No. CR 08-00158 SJO, 2008 WL 4829941, at *4 (C.D. Cal. Nov. 5, 2008) (finding that, even though officers did not know defendant's probation included a search provision, inevitable discovery doctrine applied to the search of his residence because "[i]t is extremely likely that had the officers not entered when they did, they would have properly entered and searched the residence once they confirmed the search condition").

The purpose of inevitable discovery is to "ensure[ ] that the prosecution is not put in a worse position simply because of some earlier police error or misconduct." Nix, 467 U.S. at 444. Such would be the case were the Court to grant the motions to suppress, because Agent Colkmire did the prudent thing by seeking a search warrant from a neutral and detached magistrate when he could have simply searched the hotel room and vehicles based upon mere reasonable suspicion.

### III. Conclusion

On the basis of the foregoing, Forrester's Motions to Suppress (Doc. Nos. 884 & 885) are

**DENIED** because, even if probable cause did not exist to issue the warrants, Agent Colkmire acted in good faith reliance on them and the evidence likely would have been seized because Forrester was subject to search without a warrant as a part of his probation.

    IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE